**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 14-cv-01116-RM

DEVIN HEITZMANN,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,

    Defendant.

---

**ORDER**

---

This matter is before the Court on Plaintiff Devin Heitzmann's ("Plaintiff") request for judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 1.) Plaintiff challenges the final decision of Defendant Carolyn W. Colvin ("Defendant"), Acting Commissioner of the Social Security Administration, by which she denied Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"). The Administrative Law Judge ("ALJ") ruled Plaintiff was not disabled within the meaning of the Act and therefore not entitled to DIB.

Defendant provided the Court with the administrative record. (ECF Nos. 13; 13-1; 13-2; 13-3; 13-4; 13-5; 13-6; 13-7; 13-8; 13-9; 13-10; 13-11; 13-12.) The parties have fully briefed the matter and it is ripe for adjudication. (ECF Nos. 16; 17; 18.)

For the reasons set forth below, the Court VACATES Defendant's denial of Plaintiff's DIB application and REMANDS for further consideration consistent with this Order.

I.      BACKGROUND

      A.      **Background and Relevant Medical Evidence**[1]

Plaintiff applied for DIB in November 2011, alleging disability as of April 25, 2010, due to the following conditions that limit his ability to work: severe anxiety disorder and panic attacks, chronic and severe migraine headaches, bipolar disorder, neuropathic pain neck, seizures, insomnia, peptic ulcer disease, and back pain with spasms. (Admin. R. ("Tr.") at 61-62, 126.) After Plaintiff's application was initially denied, Plaintiff requested a hearing before an ALJ which was held in January 2013. (Tr. 36-59, 60-75, 87-88.) Following the hearing, the ALJ issued a decision on February 11, 2013. (Tr. 16-31.) Plaintiff requested the Appeals Council to review the ALJ's decision and such review was denied on March 11, 2014 (Tr. 1-6, 15.) Plaintiff timely requested judicial review before the Court.

Plaintiff was born in 1984. (Tr. 126.) Plaintiff completed high school and one year of college. (*See* Tr. 140.) Plaintiff has previously worked as an asbestos removal worker and restaurant worker. (Tr. 141.) Plaintiff has not worked since April 25, 2010. (Tr. 139.)

        1.      Plaintiff's Treatment Records

Since 2006, David Castor, M.D., has treated Plaintiff as his psychiatrist. (Tr. 208-18.) In 2010, Dr. Castor referred Plaintiff to Pat Tuning, Psy.D. (Tr. 406.) Subsequent to Plaintiff's beginning treatment with Dr. Tuning, Plaintiff reported to Dr. Castor that he was able to control many of his panic attacks and was improved in his anger management. (Tr. 213.) Throughout his course of treatment, Dr. Castor prescribed Plaintiff medications—for bipolar, anxiety, insomnia—which Plaintiff intermittently changed on his own. (Tr. 210-13, *see* 255-62, *see* 264-69, 480-81.)

---

[1] The Court will not discuss impairments or conditions, *i.e.*, non-mental impairments, that are not raised in Plaintiff's opening brief.

In 2011, Plaintiff went to the emergency room a number of times. (Tr. 294-313, 220-37, 255-62, 270-73, 264-69, 247-53, 239-45.)

2. Medical Source Opinions[2]

a. *Dr. Pat Tuning*

In January 2012, Dr. Tuning opined that Plaintiff presented with the following chronic and severe symptoms: shifts in polarity between depressive and manic episodes, suicidal ideation, depressed moods, and lack of interest in pleasurable activities, severe insomnia, and a sense of worthlessness. (Tr. 406.) Dr. Tuning opined that Plaintiff is unable to "maintain a regular schedule, necessary for employment." (Tr. 406.) Dr. Tuning opined that she does "not anticipate [Plaintiff] returning to work or school . . . due to his psychological diagnoses." (Tr. 407.) Dr. Tuning assessed Plaintiff with a global functioning assessment ("GAF") of 35. (Tr. 407.)

In January 2013, Dr. Tuning provided another medical opinion. (Tr. 503.) Dr. Tuning opined that Plaintiff "continues to experience depressed affect, a sense of hopelessness, and isolation followed by a cycle of hypo-manic symptoms." (Tr. 503.) Further, Dr. Tuning noted that Plaintiff "is prone to severe anxiety and continues to experience occasional panic attacks." (Tr. 503.) Dr. Tuning further opined that Plaintiff "is unable to sustain employment at this time." (Tr. 503.)

---

[2] Kevin Powell, who worked with Plaintiff, submitted a letter indicating his opinion as to Plaintiff's disabilities. Mr. Powell is not shown to be a medical source and Plaintiff does not argue anything with respect to Mr. Powell's opinion.

b. *Brad Marten, Psy.D.*

In February 2012, Brad Marten, Psy.D., completed a consultative examination of Plaintiff. (Tr. 416-24.) Dr. Marten opined that Plaintiff "displayed adequate levels of sustained persistence though slow pace." (Tr. 423.) Dr. Marten opined that "[l]imitations in pace and processing speed are likely to negatively impact [Plaintiff's] ability to carry out various work-related tasks and functions with expected rates of speed and efficiency." (Tr. 423.) Dr. Marten further opined that Plaintiff has a "likelihood of moderate limitations in his ability to actively concentrate on more complex instructions and directions presented to him in workplace settings as well as carry out the same." (Tr. 423.) Dr. Marten opined that Plaintiff's mood instability caused interpersonal conflict which would likely "negatively impact appropriate social and interpersonal functioning in workplace settings." (Tr. 422.) Dr. Marten noted that Plaintiff "reports that his methylphenidate medication has been very helpful to him" in the areas of attention deficit and hyperactivity. (Tr. 423.) Dr. Marten assessed Plaintiff with a current GAF level of 52. (Tr. 422.)

c. *Robert Hilton*

In March 2012, state agency physician, Robert Hilton, M.D., reviewed Plaintiff's medical records. (Tr. 69-74.) Dr. Hilton opined that Plaintiff had the following moderate limitations: (1) ability to maintain attention and concentration for extended periods; (2) ability to work in coordination with or in proximity to others without being distracted by them; (3) concentration and persistence limitations; (4) ability to interact appropriately with general public; and (5) ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. 72-73.) Dr. Hilton concluded that Plaintiff's "degree of functional limitation does

not meet or equal a listing [and that] [t]he medical evidence indicates the claimant is capable of simple tasks with minimal exposure to the public or co-workers." (Tr. 73.)

### B. The ALJ's Decision

ALJ William Musseman issued his decision on February 11, 2013 denying Plaintiff DIB. (Tr. 16-31.) In reaching his decision, ALJ Musseman followed the five-step sequential evaluation process for evaluating disability claims. (Tr. 21-31.) ALJ Musseman found that Plaintiff met the insured status requirements of the Act through December 31, 2013. (Tr. 21.) ALJ Musseman found that Plaintiff had not engaged in substantial gainful activity since April 25, 2010, the alleged onset date. (Tr. 21.) ALJ Musseman found that Plaintiff has the following severe impairments: affective and anxiety disorders. (Tr. 21.) ALJ Musseman found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments described in Appendix 1 of the Social Security Regulations. (Tr. 22-24.) ALJ Musseman found Plaintiff's residual functional capacity ("RFC") to be as follows:

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: he should not be required to perform complex tasks (i.e., work should be rated at SVP 1 or 2); and he should have occasional interaction with coworkers and no interaction with the general public.

(Tr. 24.) ALJ Musseman found that Plaintiff is able to perform past relevant work. (Tr. 29-30.)

Based on the vocational expert's testimony and in consideration of Plaintiff's age, education, and work experience, ALJ Musseman additionally found that there exist other jobs in significant numbers in the national and state-wide economy that Plaintiff could perform—including floor waxer and cleaner. (Tr. 29-30.)

Therefore, ALJ Musseman concluded that Plaintiff is not disabled. (Tr. 30-31.)

### C. Procedural History

Plaintiff appealed the ALJ's decision. (Tr. 15.) On March 11, 2014, the Appeals Council denied Plaintiff's request for review. (Tr. 1-6.) Plaintiff appeals that decision by bringing this lawsuit. (ECF No. 1.)

## II. LEGAL STANDARDS

### A. Standard of Review

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id*. "It requires more than a scintilla, but less than preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

Although a district court will "not reweigh the evidence or retry the case," it "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007); *see also* 42 U.S.C. § 405(g). Evidence is not substantial if it is overwhelmed by other evidence in the record. *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the agency. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). As the Tenth Circuit Court of Appeals observed in *Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476 (10th Cir. 1993), the ALJ has a basic duty of inquiry to "fully and fairly develop the record as to material issues." *Id.* at 479-480 (citations omitted). This duty exists even when the claimant is represented by counsel. *Id.* at 480 (citation omitted).

Also, "[t]he failure to apply the correct legal standard or to provide [a reviewing] court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (citation and internal quotation marks omitted); *see also Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) ("[T]he Secretary's failure to apply the correct legal standards, or to show us that [he] has done so, are . . . grounds for reversal.").

### B.     Evaluation of Disability

The criteria to obtain DIB under Title II of the Act are that a claimant meets the insured status requirements, is younger than 65 years of age, files an application for a period of disability, and is under a "disability" as defined under Title II of the Act. 42 U.S.C. §§ 416(i) and 423(a); *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991). In addition, the individual's disability must have begun before his or her disability-insured status has expired. 20 C.F.R. § 404.101; Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *8 (1983).

The Act defines an individual as disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A); *Barnhart v. Walton*, 535 U.S. 212, 214-15 (2002).

There is a five-step sequence for evaluating a disability. *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987) (describing five-step analysis). If it is determined that a claimant is or is not disabled at any point in the analysis, the analysis ends.

*Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991) (citation omitted). First, the claimant must demonstrate that he or she is not currently involved in any substantial, gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must show a medically severe impairment or combination of impairments that significantly limits his or her physical or mental ability to do basic work activities. *Id*. at § 404.1520(c). Third, if the impairment matches or is equivalent to an established listing under the governing regulations, the claimant is judged conclusively disabled. *Id*. at § 404.1520(d). If the claimant's impairment does not match or is not equivalent to an established listing, the analysis proceeds to fourth step. *Id*. at § 404.1520(e). Fourth, the claimant must show that the "impairment prevents [him or her] from performing work [he or she] has performed in the past." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (citations omitted); *accord* 20 C.F.R. § 404.1520(f). If the claimant is able to perform his or her previous work, he or she is not disabled. 20 C.F.R. § 404.1520(f). Fifth, the Commissioner must demonstrate: (1) that based on the claimant's residual functional capacity ("RFC"), age, education, and work experience, the claimant can perform other work; and (2) the work that the claimant can perform is available in significant numbers in the national economy. *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987) (citation omitted); *see also* 20 C.F.R. § 404.1520(g).

**III. ANALYSIS**

Plaintiff raises three issues for consideration, including: (1) that the ALJ failed to give controlling weight to Dr. Tuning's medical opinion in violation of 20 C.F.R. § 404.1527(d) (ECF No. 16 at 5-8); (2) that the ALJ's RFC determination is not based upon substantial evidence

(ECF No. 16 at 8-11); and (3) the vocational expert's testimony is not based upon substantial evidence (ECF No. 16 at 8-11)[3].

Because the Court finds that the ALJ committed legal error in his analysis and his findings were not supported by substantial evidence, the Court vacates Defendant's decision.

> A. **The ALJ Did Not Err in His Assessment of Plaintiff's Treating Physician's Medical Opinion**

Plaintiff argues that the ALJ erred because the "ALJ gave no weight to the opinion of Dr. Tuning, instead giving more weight to the opinion of [Dr.] Brad Marten." (ECF No. 16 at 5.) Further, Plaintiff argues that "[e]ven if the ALJ [were] correct in finding that Dr. Tuning's opinion, was not entitled to controlling weight, he needed consider the factors set forth in 20 C.F.R. § 404.1527(d)." (ECF No. 16 at 8.) Defendant argues that Dr. Tuning's opinion was not entitled to controlling weight because it was "contradicted by the evidence" (ECF No. 17 at 13) and that the ALJ properly explained "why he gave the medical source opinion[] the weight he did." (ECF No. 17 at 16.) The Court finds merit to Defendant's position.

An ALJ is "required to give controlling weight to a treating physician's opinion about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, and any physical or mental restrictions, if 'it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record.'" *Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995) (quotation omitted); *see also* 20 C.F.R. § 404.1527(c)(2); *see also* SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996) (stating that "a finding that a treating source medical opinion is not well-supported by medically acceptable

---

[3] The Court summarily finds that Plaintiff's third argument is misplaced. The question before the Court cannot be whether the vocational expert's testimony is supported by substantial evidence. Rather, the questions before the Court can only be whether (1) the ALJ's findings are supported by substantial evidence and (2) the ALJ applied the correct legal standards. *Wall*, 561 F.3d at 1052. Therefore, the Court analyzes the vocational expert's testimony with respect to these two questions as enunciated by the Tenth Circuit in *Wall*.

clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected [and that] treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927").

The Tenth Circuit has held that the "in evaluating the medical opinions of a claimant's treating physician, the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). Under the two step analysis, "[t]he initial determination the ALJ must make with respect to a treating physician's medical opinion is whether it is conclusive, i.e., is to be accorded 'controlling weight,' on the matter to which it relates." *Id*. (citing *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)). If an ALJ finds deficiencies in the treating physician's medical opinion to resolve the controlling-weight question against a claimant, that does not end the inquiry. *Id*. Rather, "[e]ven if a treating opinion is not given controlling weight, it is still entitled to deference; at the second step in the analysis, the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Id*. (citing *Watkins*, 350 F.3d at 1300-01). "If this is not done, a remand is required." *Id*. (citation omitted). "Thus, a deficiency as to the conditions for controlling weight *raises the question* of how much weight to give the opinion, it does not resolve the latter, distinct inquiry." *Id*. at 1330-31 (emphasis in original) (citing *Langley v. Barnhart*, 373 F.3d 1116, 1120 (10th Cir. 2004) (holding that while the absence of objective testing provided a basis for denying controlling weight to a treating physician's opinion, "[t]he ALJ was not entitled, however, to

completely reject [it] on [that] basis")). This second inquiry is governed by its own set of factors, summarized as follows: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Id*. at 1331 (citing *Langley*, 373 F.3d at 1119); *see also* 20 C.F.R. § 404.1527(c)(2). Although the ALJ need not discuss each factor, *see Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2008), she "must be 'sufficiently specific' to permit meaningful" review. *Guilano v. Colvin*, 577 F. App'x 859, 861-62 (10th Cir. 2014) (unpublished) (quoting *Watkins*, 350 F.3d at 1301); *see also Krauser*, 638 F.3d at 1331 ("In applying these factors, the ALJ's findings must be 'sufficiently specific to make clear to any subsequent reviewers the weight [she] gave to the treating source's medical opinion and the reason for that weight.'")

Thus, if one or both of the conditions for giving a medical opinion controlling weight "is lacking, an ALJ is not free to simply disregard the opinion or pick and choose which portions to adopt." *Andersen v. Astrue*, 319 F. App'x 712, 718 (10th Cir. 2009) (unpublished). "Instead, the ALJ must proceed to a second determination, where the ALJ must both (1) weigh the opinion 'using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927' and (2) 'give good reasons in the notice of determination or decision for the weight [the ALJ] ultimately assigns the opinion.'" *Id*. (quoting *Watkins*, 350 F.3d at 1300-01 (internal quotation marks and alteration omitted)). "The decision must articulate the ALJ's reasoning such that later reviewers can identify both the weight that was actually assigned to the opinion and the reasons for that

weight." *Id*. at 719 (citing SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996)). "[I]f an ALJ fails to explain how she assessed the weight of the treating physician's opinion, a court cannot presume she actually applied the correct legal standards when considering the opinion." *Larkins ex rel. M.D. v. Colvin*, 568 F. App'x 646, 649 (10th Cir. 2014) (citing *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004)); *Langley*, 373 F.3d at 1119 (holding that an ALJ's reasons must be sufficiently specific to make clear to any subsequent reviewers the weight given to the medical opinion, and the reasons for that weight); 20 C.F.R. § 404.1527(e)(2)(ii) ("[T]he administrative law judge must explain in the decision the weight given to the opinions . . . of any treating, non-treating and non-examining sources. . . .").

In this matter, the ALJ found Dr. Tuning's opinions to be inconsistent with other substantial evidence in the record. (Tr. 27 ("Dr. Tuning's commentary does not square with the claimant's own reports."; "Dr. Tuning's GAF assessment of 35 is inconsistent with the record. . . ."; "Given these inconsistencies with the claimant's own statements as well as the clinical observations, Dr. Tuning's opinions are not given controlling weight.").) That is the first part of the inquiry which the ALJ properly conducted. *See Bean*, 77 F.3d at 1214 (holding that if the treating physician's medical opinion is inconsistent with other substantial evidence in the record, the ALJ may give it non-controlling weight). Plaintiff, however, argues (ECF No. 16 at 5-6) that within this first part of the inquiry, the ALJ committed factual error because the ALJ's reason for rejecting Dr. Tuning's GAF assessment of 35 is that the record did not show the "need for inpatient treatment or increased requirements for counseling or psychiatry" (Tr. 27). Specifically, Plaintiff argues that the ALJ erred because he analyzed the record as to whether Plaintiff's behaviors were "influenced by delusions or hallucinations, incoherence, grossly inappropriate acts, suicidal preoccupation, etc.—symptoms considered consistent within GAF

scores within this range." (Tr. 27.) The Court acknowledges that this is the applicable analysis for a GAF score between 21 and 30. [4] The ALJ's error, as to the incorrect GAF score analysis, however is harmless error because the substantial evidence in the record was inconsistent with Dr. Tuning's opinions. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 733-34 (10th Cir. 2005) (holding that harmless error analysis is applicable if "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way"). Because the Court "can follow the [ALJ's] reasoning in conducting [its] review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). Specifically, Plaintiff fails to point to evidence that the ALJ's error in this regard prejudiced him. (*See generally* Dkt.) That is, Plaintiff must point to evidence that would have been adduced and that could have changed the result. *See Keyes-Zachary*, 695 F.3d at 1162-63. Here, other evidence in the record indicated Plaintiff scored a 52 on his most recent GAF assessment. (Tr. 422.) Further, during a consultative examination, Dr. Marten noted that Plaintiff "explicitly denied any pronounced interpersonal difficulty other than what is again attributed to mood instability." (Tr. 423.) Further, Plaintiff's treatment records from Dr. Castor provided a longitudinal history of Plaintiff's mental impairments from 2006 through 2012 and that he was never admitted for in-patient psychiatric treatment. (Tr. 209-18, 480-82.) Further,

---

[4] A GAF score between 31 and 40 indicates some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking or mood. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)* 34 (4th ed. text revision 2000). The Court notes that the current Diagnostic and Statistical Manual of Mental Disorders (DSM-V) does not use GAF. Am. Psychiatric Ass'n *Diagnostic and Statistical Manual of Mental Disorders (DSM-V)* 16 (5th ed. 2013). The Court notes that a GAF score is not determinative of a disability. *See* 65 Fed. Reg. 50746, 70764-65 (2000) (The GAF scale "does not have a direct correlation to the severity requirements in [the Social Security Commission's] mental disorders listings.) The Tenth Circuit has noted that "[s]tanding alone, a low GAF score does not necessarily evidence an impairment seriously interfering with a claimant's ability to work . . . A GAF score of fifty or less, however, does suggest an inability to keep a job." *Lee v. Barnhart*, 117 F. App'x 674, 678 (10th Cir. 2004) (unpublished) (internal citations omitted).

the ALJ relied (Tr. 24) upon Plaintiff's testimony (Tr. 42) which reflected that his mental impairments had improved. Specifically, Plaintiff noted that his "anxiety and [] panic attacks have gone greatly away" (Tr. 42); and that, although he still experienced bipolar episodes, he has learned techniques to decrease their "severity" (Tr. 42). That is, substantial evidence in the record contradicts Dr. Tuning's opinions.

Turning to the second part of the inquiry into a treating medical provider's opinion, because the ALJ made clear how much weight he gave to Dr. Tuning's opinions ("no weight") (Tr. 27) and gave reasons (although not explicitly) tied to the factors cited in 20 CFR § 404.1527(c) ("broad nature of Dr. Tuning's opinions"; the opinion is not supported by relevant evidence; and the opinion is inconsistent with the record as a whole) (Tr. 27), the Court finds that the ALJ did not commit legal error in his analysis as to Dr. Tuning's opinions. The Court finds the ALJ was sufficiently specific as to the weight he afforded Dr. Tuning's opinions and the reasons for that weight to enable the Court's review. *See Krauser*, 638 F.3d at 1331. Contrary to the thrust of Plaintiff's argument (ECF No. 16 at 8), the ALJ was not required to mechanistically apply every relevant factor in the social security regulations. *See Oldham*, 509 F.3d at 1258. Further, contrary to much of Plaintiff's argument (ECF No. 16 at 6-8), the Court is not in the position to reweigh whether the ALJ's treatment of the evidence was correct; rather, the Court reviews whether the ALJ followed the correct legal standards and whether the ALJ's conclusion is supported by substantial evidence (which is more than a scintilla). Specifically, the ALJ found Dr. Marten and Hilton's opinions contradict Dr. Tuning's opinions. (Tr. 26-28.) And, as stated earlier, Plaintiff's testimony regarding his mental conditions contradicted Dr. Tuning's opinions. (Tr. 27, 42.) Further, the ALJ properly discounted Dr. Tuning's opinions to the extent they usurped the ultimate disability determination issue (Tr. 27). 20 C.F.R. § 404.1527(d).

For the above stated reasons, the Court finds that the ALJ did not err in affording Dr. Tuning's opinions no weight.

B. **The ALJ's Hypothetical to the Vocational Expert Failed to Account for Each of Plaintiff's Impairments and thus, the ALJ's RFC Analysis in Conjunction with the Vocational Expert's Testimony is Not Based Upon Substantial Evidence**

Plaintiff argues that the ALJ's RFC determination and proposed hypothetical to the vocational expert failed to account for all of Plaintiff's limitations. (ECF No. 16 at 9-11.) Specifically, the RFC determination that Plaintiff "is unable to perform complex tasks defined as specific vocational preparation (SVP) time of 2 or less" is underinclusive as to the pace and processing time necessary for Plaintiff. (*See* ECF No. 16 at 9.) Defendant responds that the ALJ properly used Dr. Marten and Hilton's medical opinions in fashioning an appropriate RFC. (ECF No. 17 at 11, 14-22.)

To the Court, it is not clear that the ALJ disregarded an aspect of Dr. Marten's opinion in determining Plaintiff's RFC.[5] (*See* Tr. 28 ("Great weight is accorded Dr. Marten's analysis, to the extent he advises the claimant should have some degree of accommodation in interpersonal interactions and in more complex information processing. . . .[T]he Administrative Law Judge finds that . . . [Plaintiff's] slowed information processing would restrict him to the performance of unskilled work (SVP of 1 or 2).").) That is, the ALJ attempted to fold Dr. Marten's opinion that Plaintiff's "limitations in pace and processing speed were [] likely to impact his ability to carry out various work-related tasks and functions with expected rates of speed and efficiency" (Tr. 27 (*see* Tr. 423)) into the skill level of work Plaintiff is able to complete. Specifically, under the paragraph B analysis, the ALJ found that the "evidence supports moderate limitations in maintaining concentration, persistence or pace . . . [and that the ALJ] has translated the above

---

[5] Defendant does not explicitly concede that the ALJ excluded certain aspects of Dr. Marten or Dr. Hilton's medical opinions from the RFC. (*See generally* ECF No. 17.)

'B' criteria findings into work-related functions in the residual functional capacity assessment." (Tr. 23-24.)  And it would appear that the moderate limitation found by Dr. Hilton (ability to maintain attention and concentration for extended periods (Tr. 72)) is subject to the same analysis.

Apparently relying on this attempted folding of limitations into skill levels, the question posed to the vocational expert did not include Plaintiff's moderate limitations in maintaining concentration, persistence, and pace.  (Tr. 56-58.)  Specifically, the vocational expert testified that Plaintiff previously worked as asbestos removal worker which has an SVP of 2 (Tr. 55). And the vocational expert testified that an asbestos worker, among other professions, would correspond to the ALJ's hypothetical that "an individual with the same age and educational background as the claimant, without exertional limitations.  Nonexertional limitations and no dealing with the general public; occasional interaction with coworkers; and *no complex task defined as SVP 2 or less*."  (Tr. 56 (emphasis added).)

The Tenth Circuit has noted that there is a distinction between skill level and mental functions.  *Jaramillo v. Colvin*, 576 F. App'x 870, 876 (10th Cir. 2014) (unpublished); *see also* SSR 00-4p, 2000 WL 1898704, *3 (Dec. 4, 2000) ("A skill is knowledge of a work activity that requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation that is above the unskilled level (requires more than 30 days to learn).").  In *Jaramillo*, the Tenth Circuit noted that none of the basic mental abilities of unskilled work described in SSR 85-15, 1985 WL 56857 (1985), capture any of the three moderate limitations as found by the medical consultative examiner in that case. 576 F. App'x at 876.  According to the Social Security Administration's Program Operations Manual System ("POMS"), moderately limited means "the evidence supports the conclusion that

16

the individual's capacity to perform the activity is impaired." *Jaramillo*, 576 F. App'x at 875 (citing POMS DI 24510.063 B.2). A moderate limitation "must be related with sufficient precision in a dispositive hypothetical to a [vocational expert] *and* in an RFC finding." *Jaramillo*, 576 F. App'x at 876 (emphasis added).

The limitation to "no complex task defined as SVP 2 or less" (Tr. 56) the ALJ included in his hypothetical to the vocational expert and in his RFC determination (*see* Tr. 24) *did not clearly relate* the moderate impairments Dr. Marten (Tr. 423) and Dr. Hilton (Tr. 72) found. Rather, the ALJ was required to express the moderate impairments—concentration, persistence, and pace—"in terms of work-related functions" or "[w]ork-related mental activities." *Jaramillo*, 576 F. App'x at 876 (citing SSR 96-8p, 1996 WL 374184, *6 (July 2, 1996)); *see Wiederholt v. Barnhart*, 121 F. App'x 833, 839 (10th Cir. 2005) (unpublished) (holding that because the "relatively broad, unspecified nature of the description 'simple' and 'unskilled' does not adequately [in the hypothetical posed to the vocational expert] incorporate the ALJ's additional, more specific findings regarding [the claimant's] mental impairments . . . such as moderate difficulties maintaining concentration, persistence, or pace, the resulting hypothetical question was flawed"). None of the ALJ's hypotheticals to the vocational expert included these moderate impairments—concentration, persistence, and pace. (*See generally* Tr. 56-58.) Thus, the ALJ's reliance on the jobs, including past relevant work, the vocational expert identified in response to the hypothetical (Tr. 56-57) is not supported by substantial evidence. *See Jaramillo*, 576 F. App'x at 876 (citing *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995) (explaining that a hypothetical inquiry to a vocational expert "must include all (and only) those impairments borne out by the evidentiary record") & *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) ("Testimony elicited by hypothetical questions that do not relate with precision all of a

claimant's impairments cannot constitute substantial evidence to support the [Commissioner's] decision.")).

Moderate limitations must be accounted for in an RFC finding and, consequently, in a dispositive hypothetical to a vocational expert. *Frantz v. Astrue*, 509 F.3d 1299, 1302-03 (10th Cir. 2007); *see Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007). In this case, it is clear that the dispositive hypothetical to the vocational expert did not include Plaintiff's moderate impairments (concentration, persistence, or pace). Therefore, the ALJ committed legal error in this regard. Further, in this case, it is not clear that the RFC included Plaintiff's moderate impairments (concentration, persistence, or pace). If the RFC did not include such moderate impairments, then the ALJ committed legal error. If the RFC did include such moderate impairments, then the ALJ committed legal error by not providing the Court with sufficient reasoning to ascertain such impairments presence in the RFC. *See Jensen*, 436 F.3d at 1165 (citation and internal quotation marks omitted); *see also Winfrey*, 92 F.3d at 1019.

## IV. CONCLUSION

Based on the foregoing, the Court:

(1)     VACATES Defendant's denial of disability insurance benefits; and

(2)     REMANDS to Defendant for further proceedings as directed in this Order pursuant to sentence four in 42 U.S.C. § 405(g).

DATED this 25th day of September, 2015.

BY THE COURT:

_____
Raymond P. Moore
United States District Court Judge

18